**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 24-cv-00394-NYW-NRN

JILLIAN JOHNSON,

Plaintiff,

v.

LARIMER COUNTY SHERIFF'S OFFICE,

Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (the "Motion" or "Motion for Summary Judgment"). [Doc. 71]. The Court has reviewed the Motion and related briefing and concludes that oral argument would not materially assist in its resolution. For the reasons set forth in this Order, the Motion for Summary Judgment is respectfully **DENIED**.

## BACKGROUND

This case arises out of the former employment relationship between Plaintiff Jillian Johnson ("Plaintiff" or "Ms. Johnson") and the Larimer County Sheriff's Office ("Defendant" or the "Sheriff's Office"). *See generally* [Doc. 1]. Plaintiff alleges that Defendant discriminated against her on the basis of her disability and failed to accommodate her disability, which led to her constructive discharge. [*Id.* at ¶¶ 2–3, 5, 80–81, 93–94]. She asserts two claims under the Americans with Disabilities Act ("ADA"): one failure-to-accommodate claim and one disability discrimination claim. [*Id.* at ¶¶ 95–126]. Defendant moves for summary judgment on both claims.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

At summary judgment, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once this movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted).

When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *Forth v. Laramie Cnty. Sch. Dist. No. 1*, 85 F.4th 1044, 1052 (10th Cir. 2023). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## UNDISPUTED MATERIAL FACTS

The facts of this case are largely disputed, and the Court focuses here on the limited facts on which the Parties agree and which are relevant to the Court's analysis herein.[1] While there is a dispute as to whether she passed her pre-hiring audiological screening, [Doc. 80 at 8 ¶ 4], Ms. Johnson was hired by the Sheriff's Office in May 2022. [Doc. 71 at ¶ 1; Doc. 80 at 8; Doc. 71-1 at 57:5–8].[2] Due to a hearing disability, Ms. Johnson reads lips and sometimes uses hearing aids. [Doc. 80 at 2 ¶ 2; Doc. 88 at 5 ¶ 2; Doc. 80-7 at ¶ 3; Doc. 80-3 at 62:6–13, 69:5–10]. Ms. Johnson sometimes wore her hearing aids at work, but not all of the time. [Doc. 71 at ¶ 11; Doc. 80 at 8; Doc. 71-1 at 71:10–21].

Ms. Johnson's job training included "hands-on training in the jail setting." [Doc. 71 at ¶ 6; Doc. 80 at 8; Doc. 71-1 at 55:23–57:14]. Plaintiff reported to her direct supervisor, Lieutenant Mirela Tutundzic ("Lieutenant Tutundzic"), that she was having difficulty hearing radio traffic when working at the jail. [Doc. 71 at ¶¶ 15, 17; Doc. 80 at 8; Doc. 71-3 at 59:9–60:7]. The over-the-ear amplification devices that other deputies used did not work with Ms. Johnson's hearing aids. [Doc. 80 at 3 ¶ 6; Doc. 88 at 5 ¶ 6; Doc. 80-7 at ¶ 6]. Ms. Johnson and Lieutenant Tutundzic discussed different earpieces that Ms. Johnson could try, [Doc. 71 at ¶¶ 28, 30–31; Doc. 80 at 8; Doc. 71-7 at 5–6; Doc. 71-1 at

[1] At certain times, both Parties dispute only a portion of the other side's assertion of fact. In other instances, a Party purports to dispute a certain fact but does not actually contest the substance of the assertion. In either circumstance, the Court construes the uncontested statement undisputed for purposes of this Order without further note from the Court. *See* Fed. R. Civ. P. 56(e).

[2] When citing to transcripts, the Court cites to the docket number assigned by the CM/ECF system and to the page and line numbers appearing on the transcript. In all other instances, the Court cites to the page numbers assigned by the CM/ECF system.

103:18–22, 107:5–23; Doc. 80-3 at 85:9–14], but in July 2022, Ms. Johnson informed Lieutenant Tutundzic that she had tried four different hearing devices and "nothing seem[ed] to help," [Doc. 71 at ¶ 35; Doc. 80 at 8; Doc. 71-7 at 27]. Ms. Johnson's audiologist recommended a specific type of hearing device,[3] but Ms. Johnson could not afford it. [Doc. 71 at ¶ 23; Doc. 80 at 9 ¶ 23; *id.* at 4 ¶ 9; Doc. 88 at 5 ¶ 9; Doc. 71-1 at 87:12–88:12].

Ms. Johnson requested accommodations for her hearing impairment, including "radio earpieces that would work with her prescribed hearing aids and [the] device recommended by her audiologist." [Doc. 80 at 3 ¶ 8; Doc. 88 at 5 ¶ 8; Doc. 80-3 at 107:5–16; Doc. 80-1 at 58:4–8; Doc. 80-2 at 191:19–192:3]. Lieutenant Tutundzic relayed this request to Keshav Baggan ("Mr. Baggan"), the Sheriff's Office human resources generalist, and Mr. Baggan told Lieutenant Tutundzic that it was Sheriff's Office policy to not provide "earpieces of any other type of assistive hearing devices" to jail deputies. [Doc. 80 at 4 ¶¶ 10–11; Doc. 88 at 5–6 ¶¶ 10–11; Doc. 80-1 at 97:4–14; Doc. 80-2 at 47:3–6, 180:10–181:14, 191:19–192:7, 202:12–19]. Mr. Baggan did not conduct "any undue burden analysis." [Doc. 80 at 4 ¶ 11; Doc. 88 at 6 ¶ 11; Doc. 80-2 at 264:7–265:7]. Ms. Johnson resigned from her employment with the Sheriff's Office on November 15, 2022. [Doc. 71 at ¶ 63; Doc. 80 at 8; Doc. 71-9].

## ANALYSIS

The Sheriff's Office seeks summary judgment in its favor on both of Plaintiff's ADA claims. *See* [Doc. 71].

---

[3] The Parties dispute whether this hearing tool is properly classified as an "assistive device" or "hearing aid." *See* [Doc. 88 at 5 ¶ 8]. This dispute is not material for purposes of this Order.

## I. Disability Discrimination Claim

To establish a prima facie case of disability discrimination under the ADA, an employee must show: (1) she is disabled under the ADA; (2) she was qualified, with or without reasonable accommodation, for the job she held; and (3) she suffered an adverse employment action because of her disability. *Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 760 (10th Cir. 2020); *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015). Defendant argues that it is entitled to summary judgment on Plaintiff's disability discrimination claim because Plaintiff cannot establish that she was constructively discharged (i.e., that she suffered an adverse employment action). [Doc. 71 at 13–17].[4]

As a preliminary matter, the Court notes that the Parties disagree about whether Plaintiff relies on direct or circumstantial evidence of discrimination. Defendant argues that Plaintiff "proceed[s] exclusively on the basis of circumstantial evidence." [*Id.* at 13]. Plaintiff contests this assertion, arguing that she has direct evidence of discrimination—namely, "Defendant's blanket policy that it will not provide any assistive hearing devices for jail deputies because such devices are 'personal medical devices.'" [Doc. 80 at 14–15]. She argues that this "broad, general policy not to provide assistive hearing devices to employees, even if requested or required as a reasonable accommodation for a hearing disability, is precisely the type of discriminatory employment practice the ADA is intended to eradicate." [*Id.*].

[4] For purposes of the Motion for Summary Judgment, Defendant does not dispute that Plaintiff can demonstrate the first two elements of a prima facie discrimination case. *See* [Doc. 71 at 13 n.3].

The Court need not decide whether or not the purported policy of not providing assistive hearing devices to Sheriff's Office employees amounts to direct evidence of discrimination, as such a determination is not material to the Court's analysis at summary judgment. In discrimination cases, the plaintiff must ultimately prove that the defendant, "either directly or indirectly, . . . intentionally discriminated against" the plaintiff. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). Different analytical frameworks apply when a plaintiff relies on direct or circumstantial evidence of discriminatory intent.[5] But here, Defendant does not move for summary judgment on the basis that it lacked discriminatory intent; it argues that Plaintiff cannot establish that she was constructively discharged. This argument does not require any determination about whether Defendant acted with discriminatory intent or whether Plaintiff has presented direct evidence of discrimination. *See Rivero*, 950 F.3d at 761 (concluding that "regardless of whether [the defendant] acted with discriminatory intent," the plaintiff's ADA discrimination claim failed because he could not establish a constructive discharge). The

[5] Direct evidence of discriminatory intent is "evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017) (quotation omitted). When a plaintiff does not have direct evidence and instead relies on circumstantial evidence, courts employ the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1191–92 (10th Cir. 2018). Under this framework, the plaintiff has the initial burden of establishing a prima facia case of discrimination. *Id.* at 1192. If the plaintiff does so, then the employer must "'articulate some legitimate, nondiscriminatory reason' for its actions." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting *McDonnell Douglas*, 411 U.S. at 802). If it does so, then "the burden shifts back to the plaintiff to 'show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual.'" *Litzsinger v. Adams Cnty. Coroner's Off.*, 25 F.4th 1280, 1287 (10th Cir. 2022) (quoting *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014)).

Court thus need not rule whether Plaintiff has adduced direct evidence of intentional discrimination.

Where, as here, an employee was not terminated by her employer but instead resigned from her employment, she may establish an adverse employment action by showing that she was "constructively discharged." *Bateman v. Nexstar Media Grp., Inc.*, No. 20-4114, 2021 WL 4520982, at *3 (10th Cir. Oct. 4, 2021). A constructive discharge occurs "when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004). In other words, the employee "must show that she had *no other choice* but to quit" due to the "objectively intolerable" conditions of her employment. *Rivero*, 950 F.3d at 761 (quotation omitted). "The plaintiff's burden in establishing constructive discharge is substantial." *Fischer v. Forestwood Co.*, 525 F.3d 972, 980 (10th Cir. 2008).

Again, Defendant seeks summary judgment only on the basis that Plaintiff cannot establish a constructive discharge. *See* [Doc. 71 at 14–17]. In Defendant's view, "all the evidence demonstrates that [Ms.] Johnson was treated well by her colleagues, no one made disparaging remarks about her hearing loss, her supervisors continuously worked with her to either find an earpiece that would work for her or to reassign her to another position." [*Id.* at 16].[6] In so arguing, Defendant focuses on its actions and interactions with Plaintiff. *See* [*id.*]. But Plaintiff's responsive argument goes further, considering her

[6] Defendant also argues that Plaintiff left her employment "to move back to Texas after a break-up and to be closer to family," not due to objectively intolerable working conditions. [Doc. 71 at 16]. Plaintiff, however, disputes this assertion, *see* [Doc. 80 at 7 ¶¶ 21–22], so the Court cannot grant summary judgment on this basis. *See also* infra note 7.

work environment as a *whole*. Specifically, she points to the impact her disability and Defendant's alleged failure to accommodate had on the safety of her working environment, referencing evidence that she had trouble hearing critical information over the jail radio and intercom system and that "the issues that [she] was experiencing would have caused serious safety concerns." [Doc. 80 at 17]. She contends that there is sufficient evidence for a reasonable jury to conclude "that a hearing-impaired female deputy in Ms. Johnson's position, working in the jail environment without accommodations, would have legitimate concerns about her safety and the safety of others, and that because of these concerns, she would have no choice but to resign." [*Id.*]. Ms. Johnson has adduced the following evidence in support of her position that she was constructively discharged from her employment:

- Throughout Plaintiff's employment, she had difficulty hearing radio, intercom, and in-person communications. [Doc. 80-7 at ¶ 4].[7]

- In July 2022, a training officer reported that Plaintiff was "missing [a lot] of radio traffic." [Doc. 80-6 at 1].

- In one instance, Plaintiff had trouble hearing what kitchen staff was telling her over the telephone. [Doc. 80-7 at ¶ 4]; *see also* [Doc. 80-3 at 98:24–99:2, 99:3–6; Doc. 71-8 at 50 (training reports stating that Ms. Johnson could not hear what was said

[7] In its reply brief, Defendant argues that the Court should disregard Plaintiff's affidavit as a sham affidavit. [Doc. 88 at 7–8]. Defendant states that the affidavit contradicts Plaintiff's prior testimony, but it does not identify any specific portions of the affidavit it claims contradict any specific portions of Plaintiff's deposition. *See* [*id.*]. Based on the Court's review, many of the statements in the affidavit are consistent with Plaintiff's prior deposition testimony. The Court finds it appropriate to consider the affidavit in ruling on the Motion for Summary Judgment. *See Mitchell v. Zia Park, LLC*, 842 F. Supp. 2d 1316, 1325 (D.N.M. 2012) ("When presented with a request to strike an affidavit in whole or in part, courts must first determine whether the affidavit does in fact conflict with the affiant's prior sworn statements."); *L. Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (explaining that it is an "unusual" case where an affidavit creates a sham fact issue).

over the radio concerning inmate kitchen workers)].[8] Plaintiff stated in her affidavit that "it is important to know when kitchen workers were coming back after a shift in the kitchen so they could be searched for anything they could have on them that could be a safety issue." [Doc. 80-7 at ¶ 4].

- Plaintiff attested that there were "numerous other occasions when my hearing impairment caused me concerns for my safety, such as when I was unable to hear directives given by my commanding officers telling me to lock down a certain part of the jail, when I could not hear jail medical staff giving instructions about inmate medications and was worried I would pass the incorrect medication to the inmates, when I could not hear radio and intercom communications advising me about inmate movement, and when I could not hear well enough to communicate information about which inmates had been given razors." [*Id.*].

- In or around August 2022, Plaintiff missed logging two inmates who had razors because she was having a hard time hearing her colleague say the inmates' names. *See* [Doc. 71-8 at 113].

- Lieutenant Tutundzic stated in her deposition that "[n]ot logging which inmates are getting razors because you can't hear" could "[v]ery much" cause a "serious safety concern." [Doc. 80-1 at 92:2–5].

- In October 2022, when interacting with an uncooperative inmate, Ms. Johnson did not hear a directive to exit the control room and assist within the pod and instead incorrectly secured the main control room with her inside. [Doc. 71-8 at 36].

- Also in October 2022, a supervisor had to bring "multiple status walks" to Ms. Johnson's attention because she had difficulty hearing the alert sounds. [*Id.* at 41].

- On another occasion, Ms. Johnson was "not aware of [multiple inmates]" who were waiting to come into the housing area. After the inmates "made [multiple] attempts to get her [attention, raising their voice[s]]" for about 30 seconds, they were able to get her attention. [*Id.* at 50].

- In November 2022, Ms. Johnson "expressed [difficulty] towards [being able] to [communicate with]" inmates through the intercom systems. There were "[multiple occasions]" in which Ms. Johnson required assistance in verifying what the inmates were saying to her. [*Id.* at 82].

- Ms. Johnson "near[ed] the completion of [her] training" in November 2022 and she knew that after her training was done, she would not have training offers to back

[8] The notes in Plaintiff's training records consistently have missing letters, such as the letters J, L, and I. *See, e.g.*, [Doc. 71-8 at 36, 41, 50, 113]. Despite these missing letters, the Court can ascertain the contents of the cited training records.

her up while working at the jail. [Doc. 80-7 at ¶ 9]. Ms. Johnson was "really worried about [her] safety and about being able to maintain safety within the jail" and was "increasingly concerned about being placed into the jail environment on [her] own." [*Id.*].

- Lieutenant Tutundzic agreed during her deposition that "if a deputy is not hearing things, it can cause a serious safety issue," both for the deputies and the detainees. [Doc. 80-1 at 90:13–22].

- Mr. Baggan stated in his deposition that it "[c]ould be a safety issue" if a jail deputy could not "hear and communicate in the jail environment." [Doc. 80-2 at 177:18–23].

Typically, "[w]hether a constructive discharge has occurred is a question of fact to be resolved by a jury." *Cejka v. Vectrus Sys. Corp.*, 292 F. Supp. 3d 1175, 1191 (D. Colo. 2018) (first citing *Arnold v. McClain*, 926 F.2d 963, 966 (10th Cir. 1991), then citing *Strickland v. U.P.S.*, 555 F.3d 1224, 1228 (10th Cir. 2009)). But if the record "does not give rise to a reasonable inference that a constructive discharge has occurred, the question is appropriately resolved by a judge as a matter of law." *Heutzenroeder v. Mesa Cnty. Valley Sch. Dist. 51*, 391 F. App'x 688, 693 (10th Cir. 2010); *see also Strickland*, 555 F.3d at 1229 ("[J]udgment as a matter of law is only appropriate if the evidence is susceptible to but one interpretation.").

Here, the evidence is not so one-sided as to permit a ruling on the constructive-discharge issue as a matter of law. To be sure, Plaintiff's burden to establish a constructive discharge is "substantial," and it is not enough to show that her working conditions were merely difficult or unpleasant. *Fischer*, 525 F.3d at 980–81. But here, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff's working conditions were so intolerable that a reasonable person in her position would have felt that she had no choice but to resign. Specifically, Ms. Johnson has come forward with evidence that she was repeatedly having trouble hearing

communications and directives, which required other deputies to step in, repeat themselves, and take corrective action. And because she was set to finish her training program, she was soon going to be without backup support from training deputies, which ran the risk of serious safety issues for the jail deputies and detainees.

At least a few courts throughout the country have concluded that a jury could find that a plaintiff was constructively discharged when they were subject to an unsafe or dangerous working environment. *See, e.g., Longhorn v. Or. Dep't of Corr.*, No. 6:21-cv-01267-MC, 2023 WL 3602780, at *4–5 (D. Or. May 23, 2023) (concluding that a reasonable jury could conclude that the plaintiff was constructively discharged from prison employment where her working environment "posed potential physical safety risks to" the her); *Thabatah v. Collins*, No. 23-cv-01043-NJB-DPC, 2025 WL 816290, at *6 (E.D. La. Mar. 14, 2025) (denying summary judgment on constructive discharge claim where the plaintiff alleged that her coworkers failed to assist her in dealing with a patient who threatened to kill her, leading her to feel unsafe in the workplace); *Burgos v. Se. Works*, No. 13-cv-00704-WMS, 2017 WL 2403305, at *11 (W.D.N.Y. June 2, 2017) (reasonable jury could find constructive discharge where the plaintiff feared for her safety because her co-worker brought a knife to work and made discriminatory comments). Like these cases, and construing all of the evidence in Plaintiff's favor, the Court finds that a reasonable jury could conclude that Plaintiff's working conditions were objectively intolerable. In so ruling, the Court does not pass on the remaining elements of Plaintiff's claim, including whether the alleged adverse action was "because of" Plaintiff's disability. *Rivero*, 950 F.3d at 760.

## II. Failure to Accommodate

Failure-to-accommodate claims are evaluated using a "modified" burden-shifting framework. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018). First, the plaintiff must demonstrate that (1) she is disabled, (2) she is otherwise qualified for her position, and (3) she requested a plausibly reasonable accommodation. *Id.* If the plaintiff establishes all of these elements, then "the burden shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Id.* (quotation omitted). If the employer makes either showing, then "summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitates any challenged elements of her prima face case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (cleaned up).

Defendant argues that Plaintiff's failure-to-accommodate claim "fails as a matter of law for several reasons." [Doc. 71 at 20]. In Defendant's view, the "undisputed evidence" shows that Lieutenant Tutundzic "worked extensively" with Plaintiff "to try to find various solutions, that the process was ongoing, . . . and [that Plaintiff's] own life circumstances were the reason she left her employment." [*Id.* at 25]. Respectfully, the Court finds that Defendant's various arguments disregard certain factual disputes, ask the Court to view the evidence in its favor, or otherwise fail to clearly negate an essential element of Plaintiff's claim.

First, Defendant argues that it "is not clear" that Plaintiff even needed an accommodation because "she was successfully completing her training to be a jail deputy." [*Id.* at 20]. However, whether or not Plaintiff was "successfully" completing her training is disputed. *See, e.g.*, [Doc. 80 at 2–3 ¶ 5; *id.* at 11 ¶ 50]; *see also* [Doc. 80-1 at 29:9–13 (training program lasts, on average, four months); Doc. 71-1 at 57:5–11 (Plaintiff was hired in May 2022); Doc. 71-8 at 6 (Plaintiff still in training in November 2022); Doc. 80-3 at 47:5–48:6, 98:13–99:14, Doc. 80-7 at ¶ 4; Doc. 71-8 at 41, 50, 113]. And whether or not she was successfully completing her training does not negate the identified concerns regarding workplace safety. Defendant is not entitled to summary judgment on this basis.

Second, Defendant states that Plaintiff "admits that she did not always wear her hearing aids while she was working in the jail," so she "should not be permitted to create liability for her employer by failing to utilize a personal use item she possessed and which may have aided her ability to hear." [Doc. 71 at 20]. It is unclear what portion of Ms. Johnson's failure-to-accommodate claim this argument attacks, and Defendant does not cite any legal authority in support of this assertion. *See* [*id.*]. Furthermore, this argument is speculative and at best creates a genuine issue of material fact. *See* [*id.* at 20–21 (speculating that Plaintiff's hearing aids may have been "less than perfect given their age," that the hearing aids "may have" aided Plaintiff's ability to hear had she used them, and that Plaintiff's hearing aids were not medically required)]. Whether or not Plaintiff's requested accommodation was reasonable or necessary is a question for the jury to decide.

Defendant's next three arguments say that it properly engaged in the interactive process with Plaintiff, primarily relying on certain actions taken by Lieutenant Tutundzic. *See* [Doc. 71 at 21–22]. "The federal regulations implementing the ADA envision an interactive process that requires participation by both parties." *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (quotation omitted). The employer and the employee "have an obligation to proceed in a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodations, for another job within the company and, if so, to identify an appropriate reassignment opportunity if any is reasonably available." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999). "Whether both parties acted in good faith with respect to their obligation to engage in the interactive process is typically a question of fact for the jury." *E.E.O.C. v. W. Trading Co.*, No. 10-cv-02387-WJM-MEH, 2012 WL 1460025, at *8 (D. Colo. Apr. 27, 2012).

While Defendant insists that it did all it needed to do with respect to the interactive process, [Doc. 71 at 21–22], Plaintiff disagrees. She argues that Mr. Baggan, not Lieutenant Tutundzic, was the person responsible for engaging in the interactive process, and she points out that he "admitted that he did not do so." [Doc. 80 at 24 (emphasis omitted)]; *see also* [Doc. 80-1 at 98:18–99:6, 195:12–196:4 (Lieutenant Tutundzic stating that she did not know what was required under the ADA and "wouldn't even know where to begin" when it comes to the interactive process); Doc. 80-2 at 191:19–193:13 (Mr. Baggan stating he never talked to Plaintiff about her request for hearing aids and instead told Lieutenant Tutundzic that the Sheriff's Office does not provide personal medical devices for employees), 202:12–203:17, 264:7–265:7 (Mr. Baggan stating that he did not

evaluate the burden that providing hearing aids would place on the Sheriff's Office)]. Defendant disputes that it was Mr. Baggan's sole responsibility to engage in the interactive process. *See* [Doc. 88 at 12–13]. These disputes of fact cannot be resolved at summary judgment, and the Court finds that Plaintiff has put forth sufficient evidence that the Sheriff's Office, through Mr. Baggan, failed to engage in the interactive process. *See Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2004) (evidence that employer did not "inquire about [the plaintiff's] restrictions or about the accommodations that he needed to perform" his job was sufficient to find a failure to accommodate); *Aubrey v. Koppes*, 975 F.3d 995, 1008 (10th Cir. 2020) (reasonable jury could find that employer failed to engage in interactive process because employer did not ask employee about her limitations or explore what accommodations she might need).

Next, Defendant argues that "*if* [Ms.] Johnson now attempts to argue that the interactive process itself caused an unreasonable delay in finding a suitable accommodation, the law does not support such a theory in this case." [Doc. 71 at 22 (emphasis added)]. But Ms. Johnson does not make this argument. *See* [Doc. 80 at 24 ("Ms. Johnson argues that Defendant *did not engage in* the interactive process, *not* that the interactive process took too long.")]. Therefore, the Court does not address this argument.

Finally, Defendant contends that Ms. Johnson "never complained that she wasn't being accommodated despite knowing that she could lodge a complaint if she really believed she was experiencing any form of discrimination." [Doc. 71 at 24]. Again, it is unclear what part of Ms. Johnson's failure-to-accommodate claim this argument attacks. In any event, Defendant's accompanying arguments essentially ask the Court to weigh

the evidence in its favor and ignore material disputes of fact. *See* [Doc. 81 at 24–25]. The Court cannot do so.

For the reasons set forth in this Order, the Court finds that summary judgment is not appropriate on either of Plaintiff's claims. The Motion for Summary Judgment is respectfully **DENIED**.

## CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [Doc. 71] is **DENIED**;

(2) A Telephonic Status Conference is **SET** for **November 10, 2026 at 1:30 P.M.** for purposes of setting a Final Pretrial/Trial Preparation Conference and trial date. The Parties shall participate using the following dial-in information: **571-353-2301; Access Code: 783456374**. Prior to the Status Conference, the Parties **SHALL** meet and confer regarding the length of time they request for trial and whether there are any unique issues for the Court to consider.

DATED: October 20, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge